```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
INTERNATIONAL ASSOCIATION OF HEAT      :
AND FROST INSULATORS AND ASBESTOS      :
WORKERS LOCAL UNION NO. 12A and        :    REPORT AND
TRUSTEES OF THE ASBESTOS WORKERS       :    RECOMMENDATION
LOCAL 12A HEALTH AND ANNUITY FUNDS,    :
                                       :    09 Civ. 1771 (RJH) (JLC)
              Plaintiffs,              :
                                       :    (ECF Case)
       -v-                             :
                                       :
TRADE WINDS ENVIRONMENTAL, a/k/a       :
TRADE WINDS ENVIRONMENTAL              :
RESTORATION, INC.,                     :
                                       :
              Defendant.               :
-----------------------------------------------------------X
```

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Richard J. Holwell, United States District Judge:**

On February 16, 2010, the Court granted the motion of plaintiffs International Association of Heat and Frost Insulators and Asbestos Workers Local Union No. 12A (the "Union") and the Trustees of the Asbestos Workers Local 12A Health and Annuity Funds (the "Funds") (together the "Plaintiffs") for a default judgment against defendant Trade Winds Environmental (the "Defendant"). (Doc. 11). The Court thereafter referred the matter for an inquest into damages. (Docs. 12, 13). For the reasons stated below, I recommend that the Court enter judgment for Plaintiffs against Defendant in the amount of $17,118.05 plus prejudgment interest calculated by the Clerk of the Court as set forth in Parts II.B.2 and II.C.1 infra.

1

## I. **Background**

Plaintiffs bring this action under §§ 502 and 515 of the Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C. §§ 1132, 1145) ("ERISA"), and § 301 of the Labor-Management Relations Act of 1947, Pub. L. No. 80-101, 61 Stat. 136 (codified as amended at 29 U.S.C. § 185) (the "Taft-Hartley Act"). (Complaint ("Compl.") ¶ 1 (Doc. 1)). The Union is a labor organization under Section 301 of the Taft-Harley Act. (Id. ¶ 5). The Funds are fiduciaries of employee welfare benefit plans and employee benefit plans as defined in ERISA, 29 U.S.C. § 1002(3). (Id. ¶ 6).

The Funds provide various fringe benefits to eligible employees on whose behalf Defendant contributes to the Funds pursuant to a collective bargaining agreement (the "CBA") between Defendant and the Union. (Id. ¶ 13; Affidavit of Cynthia Devasia dated May 24, 2010 ("Devasia Aff.") ¶ 16 (Doc. 20)). The CBA obligates Defendant, among other things, to: (1) pay and/or submit the required monetary contributions and/or reports to the Funds for all work performed by Defendant's employees within the geographical jurisdiction of the Union (Compl. ¶ 8 (Doc. 1)); (2) remit union dues check-offs that it deducts from the wages paid to employees who authorize the deduction to the Union (id. ¶ 11); and (3) submit its books and records for inspection and audit to, among others, the Funds' auditor to confirm that fringe benefit contributions and union dues owed to the Union are paid in full (id. ¶ 14).

A certified audit of Defendant's books and records conducted during September 2008 revealed that Defendant failed to remit to Plaintiffs $9,988.00 in fringe benefit contributions and $2,344.70 in union dues check-offs. (Id. ¶¶ 16-18, 40-41; Devasia Aff. ¶¶ 17-18 & Ex. H (Doc. 20)). Accordingly, on February 25, 2009, Plaintiffs filed suit against Defendant alleging, among

other things, that Defendant's failure to make these payments constituted violations of ERISA, the CBA, and the Taft-Hartley Act. (Compl. ¶¶ 18, 25, 42 (Doc. 1); Devasia Aff. ¶ 19 (Doc. 20)).

On February 16, 2010, the Court granted Plaintiffs' motion for a default judgment against Defendant. (Doc. 11). On February 22, 2010, the case was referred to Magistrate Judge Eaton to conduct an inquest into damages, and reassigned to me on March 2, 2010. (Docs. 12, 13). On June 1, 2010, Plaintiffs filed an Affidavit of Cynthia Devasia and their proposed findings of fact and conclusions of law in support of inquest damages. (Docs. 19, 20). The deadline for Defendant to respond passed without response on June 24, 2010. (See Order dated March 10, 2010; Endorsement dated April 19, 2010 (Docs. 14, 15)).

Plaintiffs seek damages in the amount of $20,091.02, consisting of (1) $9,988.00 for unpaid fringe benefit contributions; (2) $2,344.70 for unpaid union dues check-offs; (3) $1,474.62 in interest on these amounts; (4) $1,474.62 in liquidated damages; (5) $2,596.00 in audit costs; (6) $1,653.33 in attorney's fees; and (7) $559.75 in costs. (Devasia Aff. ¶ 28 (Doc. 20)).

## II. Discussion

### A. Legal Standard

Since the district court previously entered a default judgment in this case, the only remaining issue is the amount of damages owed to Plaintiffs. In light of Defendant's default, Plaintiffs' allegations, with the exception of those relating to damages, are accepted as true. See, e.g., Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)); Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993). Plaintiffs, however, bear the burden of establishing their entitlement to recovery and thus must substantiate their claims with evidence to prove the extent of damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citing Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

Although the Court may hold a hearing to assess those damages, a hearing is not required where a sufficient basis on which to make a calculation exists. See Fed. R. Civ. P. 55(b)(2); see also Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993). Indeed, the Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). "Magistrate judges and district courts have interpreted this to mean that, even when the defendant defaults and is not present to object, damages must be based on admissible evidence." House v. Kent Worldwide Mach. Works, Inc., 359 Fed. App'x 206, at *1 (2d Cir. 2010) (summary order) (citations omitted). As Plaintiffs' submissions provide a sufficient basis, no

hearing is required, and I will rely on the affidavit Plaintiffs have submitted in determining the reasonableness of the damages requested. See Tamarin, 13 F.3d at 54.

### B. Damages Under ERISA

As a general matter, ERISA requires employers to make contributions to multi-employer plans in accordance with governing agreements such as the CBA, 29 U.S.C. § 1145, and authorizes a civil action in federal district court by fiduciaries of a complaining pension fund, 29 U.S.C. § 1132. Regarding damages, Section 1132(g)(2) provides that in an action

> by a fiduciary for or on behalf of a plan . . . in which a judgment in favor of the plan is awarded, the court shall award the plan—(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2). Following these statutory provisions, we now consider each category of damages that Plaintiffs have sought in their application to the Court.

#### 1. Unpaid Fringe Benefit Contributions

Plaintiffs have provided an audit report that establishes the amount of unpaid fringe benefit contributions as $9,988.00. (Devasia Aff. ¶ 23 & Ex. H, at 2 (Doc. 20)). This audit report constitutes sufficient proof of these damages. See, e.g., Alston v. Northstar La Guardia LLC, No. 10 Civ. 3611 (LAK) (GWG), 2010 WL 3432307, at *3 (S.D.N.Y. Sept. 2, 2010); New York City Dist. Council of Carpenters v. Rock-It Contracting, No. 09 Civ. 9479 (JGK) (AJP),

5

2010 WL 1140720, at *2 (S.D.N.Y. Mar. 26, 2010). Accordingly, Plaintiffs should be awarded $9,988.00 for unpaid fringe benefit contributions.

### 2. Interest on Unpaid Fringe Benefit Contributions

Plaintiffs are also entitled to interest on these unpaid fringe benefit contributions. See 29 U.S.C. § 1132(g)(2)(B). Section 1132(g)(2) provides that this interest "shall be determined by using the rate provided under the plan, . . . ." Id. § 1132(g)(2). Here, Article VIII, Section 8(h)(2) of the CBA provides that the interest rate that should be applied to these unpaid contributions is the rate prescribed under 26 U.S.C. § 6621—the federal short-term interest rate, which the Internal Revenue Service adjusts quarterly, plus 3 percentage points.[1] (Devasia Aff. Ex. G, at 17 (Doc. 20)). Plaintiffs seek to have an interest rate of 3.71%, which Plaintiffs erroneously contend is the statutory rate prescribed under 26 U.S.C. § 6621, run on the entire amount of the unpaid contributions—$9,988.00—beginning on September 1, 2006. (Id. ¶ 24). The Court cannot grant this request, however, because the full amount of unpaid contributions

---

[1] 26 U.S.C. § 6621(a)(2) provides, in relevant part, that the "underpayment rate established under this section shall be the sum of—(A) the Federal short-term rate determined under subsection (b), plus (B) 3 percentage points."

The Federal short-term rate for the fourth quarter of 2007, the first applicable period of delinquency, as discussed infra, was 5%. Rev. Rul. 2007-56. Consequently, the statutory rate under 26 U.S.C. § 6621 for the fourth quarter of 2007 was 5% plus 3% or 8%. The statutory rate—including the 3 percentage points—for the 1st quarter of 2008 was 7%. Rev. Rul. 2007-68. The statutory rate for the second quarter of 2008 was 6%. Rev. Rul. 2008-10. The statutory rate for the third quarter of 2008 was 5%. Rev. Rul. 2008-27. The statutory rate for the fourth quarter of 2008 was 6%. Rev. Rul. 2008-47. The statutory rate for the first quarter of 2009 was 5%. Rev. Rul. 2008-54. The statutory rate for the second quarter of 2009 was 4%. Rev. Rul. 2009-07. It remained 4% for the rest of 2009 and 2010. See IRS.gov., Interest Rates Remain the Same for the Fourth Quarter of 2010, http://www.irs.gov/newsroom/article/0,,id=226694,00.html (last visited Dec. 23, 2010).

was not due on this date. In fact, the full amount of unpaid contributions was not due until August 24, 2008. (Id. Ex. H, at 5).

Where, as here, damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y.C.P.L.R. § 5001(b) (McKinney 2010).[2] "Consistent with this statute, courts deciding damage awards in ERISA cases routinely calculate prejudgment interest from a midpoint date in the delinquency period, . . . ." Alston, 2010 WL 3432307, at *3 (citing Finkel v. Triple A Grp. Inc., No. 07-CV-2653 (RRM) (SMG), 2010 WL 1688359, at *7 (E.D.N.Y. Apr. 27, 2010)). According to the audit report, the first contribution became due on April 8, 2007 and the last contribution became due on August 24, 2008. (Devasia Aff. Ex. H, at 5 (Doc. 20)). Interest should thus be calculated from the midpoint date of December 16, 2007.

Consequently, prejudgment interest on $9,988.00 is to be calculated by the Clerk of the Court as follows: (1) from December 16, 2007 to December 31, 2007, at a rate of 8% per annum; (2) from January 1, 2008 to March 31, 2008, at a rate of 7% per annum; (3) from April 1, 2008 to June 30, 2008, at a rate of 6% per annum; (4) from July 1, 2008 to September 30, 2008, at a rate of 5% per annum; (5) from October 1, 2008 to December 31, 2008, at a rate of 6% per annum; (6) from January 1, 2009 to March 31, 2009, at a rate of 5% per annum; and (7) from April 1, 2009 to the present, at a rate of 4% per annum.

---

[2] "[F]ederal courts frequently apply [New York law] in calculating interest in ERISA cases, . . . ." Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Manhattan Plumbing Corp., No. 08 CV 3036 (FB) (RML), 2009 WL 5821676, at *5 n.4 (E.D.N.Y. Oct. 8, 2009).

### 3. Liquidated Damages

ERISA also allows Plaintiffs to recover the greater of interest or liquidated damages of 20% of the unpaid fringe benefit contributions. 29 U.S.C. § 1132(g)(2)(C). Here, 20% of the unpaid contributions, $1997.60, is the greater amount. Consequently, Plaintiffs should be awarded $1997.60 in liquidated damages.

### 4. Attorney's Fees & Costs

Plaintiffs may also recover reasonable attorney's fees and costs from Defendant. See 29 U.S.C. § 1132(g)(2)(D) ("In any action . . . by a fiduciary for or on behalf of a plan to enforce [§ 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant."); see also Labarbera v. Clestra Hauserman, Inc., 369 F.3d 224, 226 (2d Cir. 2004).

Although "[t]here is no precise rule or formula for making [attorney's fee award] determinations," Hensley v. Eckerhart, 461 U.S. 424, 436 (1983), in the Second Circuit, reasonable attorney's fees awards are calculated using the standard of the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008); see also Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). In determining "'the presumptively reasonable fee' calculation, . . . district courts are advised "to bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate,' . . . ." Simmons, 575 F.3d at 172 (quoting Arbor Hill, 522 F.3d at 117-

18). These variables include the Johnson factors[3] and that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Additionally, "[a]ccording to the forum rule, courts 'should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" Simmons, 575 F.3d at 174 (quoting Arbor Hill, 493 F.3d at 119).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437. Moreover, applications for an award of fees must be documented by time records that are contemporaneously created and that specify, for each attorney, the date, the hours expended, and the nature of the work done. Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (citations omitted). "[C]ounsel . . . [are] not required to record in great detail how each minute of [their] time was expended," but "counsel should identify the general subject matter of [their] time expenditures." Hensley, 461 U.S. at 437 n.12.

Here, Plaintiffs seek $1,653.33 in attorney's fees and support their request with contemporaneous time records, organized by attorney and date, detailing the work completed and the time expended in twelfth-of-an-hour increments. (Devasia Aff. ¶ 27 & Ex. I (Doc. 20)).

---

[3] The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases. Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92-93 (1989).

These contemporaneous records take the form of four billing statements provided by Plaintiffs: (1) Statement No. 3926 (id. Ex. I, at 1); (2) Statement No. 3930 (id. Ex. I, at 2); (3) Statement No. 3931 (id. Ex. I, at 5); and (4) Statement No. 4302 (id. Ex. I, at 7). I am unable to ascertain from Statement No. 3926 that the nature of the work reflected in the highlighted entry on that statement was solely related to this action under 29 U.S.C. § 1132(g)(2)(D) and under the standard established by the Second Circuit in Carey. See New York State Assoc. for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983) ("[A]ny attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done."); Scott v. City of New York, — F.3d —, Nos. 09-3943-cv (L), 09-5232-cv (XAP), 2010 WL 4869766, at *3 (2d Cir. Dec. 1, 2010) ("Carey sets out unequivocally that absent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications."). Instead, I am only able to determine that one of the three tasks reflecting a total of .55 hours of work in the relevant entry in Statement No. 3926 was solely related to this action—Ms. Devasia's conference regarding the "new [Trade Winds] litigation." Accordingly, I will assume that Ms. Devasia spent one-third of the total time spent, .18 hours, on this task.

These four statements together demonstrate that Ms. Devasia spent 10.43 hours on this action at an hourly rate of $200.00 per hour—constituting total attorney's fees of $2,086.00.[4] (Devasia Aff. Ex. I, at 2-8). The time expended by Ms. Devasia and her hourly rate are

---

[4] It is unclear how Plaintiffs arrived at their requested attorney's fee award of $1,653.33.

10

reasonable, and Plaintiffs should thus be awarded $2,086.00 in attorney's fees.[5] See Alston, 2010 WL 3432307, at *4 (awarding $1,450.00 in attorney's fees in action to recover unpaid fringe benefit contributions after default judgment); Rock-It Contracting, 2010 WL 1140720, at *4 (collecting cases and concluding that the reasonable rates generally charged for actions to collect unpaid fringe benefit contributions under ERISA are $400.00 per hour for partners and $300.00 per hour for associates).

Plaintiffs also seek costs in the amount of $559.75. (Devasia Aff. ¶ 27 & Ex. I). As before, Plaintiffs support this request with billing statements—specifically, Billing Statements 3931 and 4302—that establish costs of (1) $479.75 for service of process and the fee associated with the filing of the complaint, (id. Ex. I, at 6), and (2) $222.00 for service of process and the fee associated with the filing of the motion for default judgment (id. Ex. I, at 8).

These costs totaling $701.75 are reasonable and are specifically recoverable under 29 U.S.C. § 1132(g)(2)(D). See Alston, 2010 WL 3432307, at *4 (awarding $430.00 in costs in ERISA action to recover unpaid fringe benefit contributions after default judgment); New York City Dist. Council of Carpenters Pension Fund v. Quantum Constr., No. 06 Civ. 13150 (GEL) (JCF), 2008 WL 5159777, at *13 (S.D.N.Y. Dec. 9, 2008) (awarding $2,505.50 in costs in similar action after default judgment). Accordingly, Plaintiffs should be awarded $701.75 in costs.[6]

---

[5] It is unclear whether Devasia is a partner or associate; however, she has been practicing law for about eight years. See Kohler & Issacs LLP, Cynthia Devasia, http://www.koehler-isaacs.com/attorney/devasia.htm (last visited Dec. 23, 2010).

[6] Again, it is unclear how Plaintiffs arrived at their requested cost award of $559.75.

11

C.   **Damages Under the CBA**

Plaintiffs also seek damages that, they contend, are recoverable under the CBA and Section 301 of the Taft-Hartley Act. Specifically, they seek (1) $2,344.70 in unpaid union dues check-offs; (2) interest on the union dues check-offs; and (3) $2,596.00 in audit costs. (Devasia Aff. ¶ 28 (Doc. 20)).

Tracking the language of ERISA, Article VIII, Section (h) of the CBA—its damages provision—provides that in the event that Plaintiffs initiate any legal action to collect delinquent contributions to the Funds,

> the Employer shall pay to such Fund, . . . (1) the unpaid contributions, (2) interest on unpaid contributions determined by using the rate prescribed under section 6621 of Title 26 of the United States Code; (3) an amount equal to the aforesaid interest on the unpaid contributions as and for liquidated damages; (4) reasonable attorneys' fees and costs of the action; (5) audit costs; and (6) such other legal or equitable relief as the court deems appropriate.

(Id. Ex. G, at 17).

1.   **Union Dues Check-Offs & Interest**

Plaintiffs affirm that they are entitled to the unpaid union dues check-offs because "the longstanding practice under the CBA has been to apply Article VIII(h)'s [sic][7] damages provisions to the delinquent payments of both fringe benefits and unpaid union dues-checkoffs." (Id. ¶ 21). Plaintiffs support their contention with an audit report establishing the amount of unpaid union dues check-offs as $2,344.70. (Id., Ex. H, at 2, 4 (Doc. 20)). The audit report provides sufficient substantiation of these damages, and Plaintiffs should be awarded $2,344.70. See Mason Tenders v. Taher Contracting Co., No. 02 Civ. 9227 (RLC) (RLE), 2005 WL

---

[7] Plaintiffs appear to mean Article VIII, § 8(h).

12

2654372, at *2 (S.D.N.Y. Oct. 13, 2005) (awarding damages for unpaid union dues where plaintiffs' CBA entitled them to dues and plaintiffs substantiated amount with audit report); Mason Tenders Dist. Welfare Fund v. Santa Fe Constr., No. 03 Civ. 5882 (RCC), 2005 WL 486700, at *1-2 (S.D.N.Y. Mar. 2, 2005) (same); Bricklayers Dist. Council Welfare Fund v. Capri Constr. Corp., No. 93 Civ. 2904 (SS), 1995 WL 72403, at *3 (S.D.N.Y. Feb. 10, 1995) (same).

Plaintiff may also recover interest on the dues check-offs. Here, Article VIII, Section 8(h) of the CBA provides that the interest rate that should be applied to the dues check-offs is the rate prescribed under 26 U.S.C. § 6621—the federal short-term interest rate plus 3 percentage points. See Part III.B.2 supra. Moreover, as before, interest should be calculated from the midpoint date of the delinquency period, December 16, 2007. Id. Accordingly, prejudgment interest on the amount of $2,344.70 is to be calculated by the Clerk of the Court, as follows: (1) from December 16, 2007 to December 31, 2007, at a rate of 8% per annum; (2) from January 1, 2008 to March 31, 2008, at a rate of 7% per annum; (3) from April 1, 2008 to June 30, 2008, at a rate of 6% per annum; (4) from July 1, 2008 to September 30, 2008, at a rate of 5% per annum; (5) from October 1, 2008 to December 31, 2008, at a rate of 6% per annum; (6) from January 1, 2009 to March 31, 2009, at a rate of 5% per annum; and (7) from April 1, 2009 to the present, at a rate of 4% per annum.

### 2. Audit Costs

Finally, Plaintiffs seek to recover audit costs of $2,596.00 under Article VIII, Section (h)(5) of the CBA.[8] (Devasia Aff. ¶ 35). Plaintiffs may not recover these costs. "'Requests for audit costs are generally determined by utilizing the same standards the court applies in awarding attorneys' fees . . . [and thus] must include, at minimum, some breakdown of the auditors' rates charged and hours expended.'" Trs. of Plumbers Local Union No. 1 Welfare Fund v. William J. Kennedy Plumbing, Inc., No. CV-08-3939 (CBA) (SMG), 2010 WL 1265197, at *3 (E.D.N.Y. Feb. 18, 2010) (quoting Trs. of Plumbers Local Union No. 1 Welfare Fund v. Axiom Plumbing & Heating Corp., No. 08-CV-116 (FB) (JMA), 2009 WL 2461738, at *5 (E.D.N.Y. Aug. 11, 2009)). Moreover, the Second Circuit has made clear that a court "may not just accept [a party's] statement of the damages." Transatlantic, 109 F.3d at 111 (reversing district court's determination, after default judgment, that accepted at face value plaintiff's unsubstantiated estimation of damages in complaint).

Plaintiffs fail to provide any substantiation of their audit costs; consequently, I cannot recommend that such costs be awarded. During the time period permitted for objections, however, Plaintiffs may renew their motion with respect to audit costs by providing adequate substantiation to the district judge and thus demonstrating a basis for collecting them.

---

[8] Under 29 U.S.C. § 1132(g)(2)(E) of ERISA, a court may award "such other legal or equitable relief as [it] deems appropriate." Some courts in this District have awarded audit costs under this provision. See New York Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc., 657 F. Supp. 2d 410, 425 (S.D.N.Y. 2009) (citing Mason Tenders Dist. Council v. Aurash Constr. Corp., No. 05 Civ. 1891 (RCC), 2006 WL 647884, at *4 (S.D.N.Y. Mar. 15, 2006)). Here, Plaintiffs seek audit costs only under the CBA. (Devasia Aff. ¶ 26 (Doc. 20)).

### III.    Conclusion

For the foregoing reasons, Plaintiffs should be awarded (1) $9,988.00 in unpaid fringe benefit contributions; (2) $2,344.70 in unpaid union dues check-offs; (3) $1997.60 in liquidated damages; (4) $2,086.00 in attorney's fees; (5) $701.75 in costs; (6) prejudgment interest on unpaid fringe benefit contributions to be calculated by the Clerk of the Court as set forth in Part II.B.2 supra; and (7) prejudgment interest on unpaid union dues check-offs to be calculated by the Clerk of the Court as set forth in Part II.C.1 supra.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Richard J. Holwell, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Holwell. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993).

Dated: New York, New York
       December 23, 2010

JAMES L. COTT
United States Magistrate Judge

**Copy by ECF to:**

Cynthia Devasia, Esq.

**Copy by mail to:**

Trade Winds Environmental
895 Waverly Avenue
Holtsville, NY 11742

Hon. Richard J. Holwell